*In re* BRADLEY'S ESTATE.

BRADLEY *v.* STEINER.

1. WILLS — LOST WILL — EVIDENCE — SUFFICIENCY—QUESTION FOR JURY.

In proceedings to establish a lost will, claimed by contestant, testator's daughter, to have been destroyed by him, contradictory testimony by a witness that she saw and read the will after the date contestant claimed it was destroyed, *held*, to present a question for the jury.

2. SAME—EVIDENCE—ADMISSIBILITY—CREDIBILITY OF WITNESSES—TRIAL.

Testimony as to the erratic conduct of contestant, and as to her matrimonial ventures and divorces, including the record in a divorce case wherein contestant was charged with adultery, and that testator was aware thereof, was admissible for the purpose of showing the motive of testator in giving her only a life interest in his estate, and the court properly refused to limit its use to the credibility of contestant, who had testified that the grounds of the divorce in said case was desertion.

3. SAME—IMPEACHMENT—EVIDENCE.

Testimony by a witness for proponent that she saw and read the will after the date it was claimed by contestant and her husband to have been destroyed by testator bore directly upon the main issue of the case, and the trial court properly refused a requested instruction that it was admitted for the sole purpose of impeachment, although it was not offered until after contestant and her witnesses had testified.

4. TRIAL—ORDER OF PROOF WITHIN COURT'S DISCRETION.

The order of proof is, within reasonable limits, a matter of discretion with the trial court.

Error to Muskegon; Vanderwerp (John), J. Submitted January 23, 1923. (Docket No. 51.) Decided June 4, 1923.

Edward B. Bradley presented for probate a copy

of the lost will of James M. Bradley, deceased.     The will was disallowed in the probate court, and proponent appealed to the circuit court.     Judgment for proponent.     Contestant, Jennie L. Steiner, brings error.     Affirmed.

*Macdonald & Macdonald,* for appellant.

*Bunker & Rogoski,* for appellee.

BIRD, J.     This proceeding was begun to establish the lost will of James M. Bradley, deceased.     Mr. Bradley was a resident of Muskegon for many years prior to his death, which occurred in July, 1919.     In April of the same year he made the will in controversy.     By this will he gave to his daughter, Jennie L. Steiner, the contestant herein, a life use of a considerable estate and trusteed the same for her benefit, with a provision that after her decease the remainder should go to his brother, Edward B. Bradley, and his heirs, who reside in the State of Connecticut.     When the will was prepared a carbon copy was made, and the testator sent it to his brother, Edward, the proponent herein.     After Mr. Bradley passed away a search was made for the will, but it could not be found among his private papers.     Failing to find the original will, Edward B. Bradley offered the carbon copy and proposed its allowance as the last will of his brother.     This issue was met by the testimony of Jennie L. Steiner that this will was destroyed by burning in her presence by her father in May, 1919.     The issue was tried out in the circuit court and the jury found against the proposed will.     The case then came to this court for review and this court reached the conclusion that the verdict of the jury was against the weight of the evidence, and ordered a new trial.     The proceeding was re-

turned to Muskegon circuit court and a retrial has been had on the same issue, the jury this time finding in favor of the will.     It is now before us for review the second time.     A more complete statement of facts will be found in the first opinion in 215 Mich. 72.

The records and briefs in this appeal indicate that, in substance, both parties made the same case which they made on the first trial, except that each party had an additional and important witness.     Noah Cohn was the important witness produced by contestant.     He testified he was in the hospital with Mr. Bradley in his last illness, and that Mr. Bradley talked with him about his daughter and about the destruction of the will.     The material part of his testimony follows:

"I says, 'Why don't you hire a special nurse?'     He says, 'I cannot afford it.'     I says, 'your daughter will have enough.'     'Yes, she will have enough, but I made out so many wills, five of them,' he says, 'and then I read the last will to my daughter and she cried and she says if ma would have lived you would never had a chance to make that will out, and so,' he says, 'I got tired of it and I felt sorry for her and I destroyed them and told her I was going to make out one more will for her, all, as my brother is rich enough, my brother is rich enough, and if he should happen to die before I will, he will never leave my daughter anything; why should I leave it to him?'"

This testimony corroborated the testimony of Jennie L. Steiner that she saw her father destroy the will in May, 1919.

The additional testimony for proponent was given by Martha Riggle.     She had been employed by Jennie L. Steiner for nearly two years.     A part of the time she ran a rooming house for her.     While Mr. Bradley was in the hospital during his last illness Mr. Steiner visited the rooming house, and while there dropped

a paper, and the following conversation was had concerning it:

"I said, 'you dropped a paper.' He looked down and he said, 'yes, and a damned valuable one.' He picked it up. I said, 'Just how valuable?' He did not make an answer, but he handed me the paper. I looked at it and read it in part. I read the outside of it and I glanced over the rest of it. On the outside it said 'Last Will and Testament of James M. Bradley, April 19, 1919.' I read it over hurriedly, but I noticed at a glance that it said this property was to be Jennie L. Steiner's for lifetime, at her death it was to go back to the Bradley heirs, and I noticed the place it said James Balbirnie was to be executor of the will, and then that is all I noticed of the will, and I noticed it was signed by James M. Bradley."

This testimony contradicted the testimony of Jennie L. Steiner, because, if the husband was in possession of the will it was not destroyed, as she had theretofore testified, in May, 1919. These items of new testimony bore upon the question of fact. They were for the consideration of the jury. They raise no question of law for the court except the question which appellee raises that the testimony of Mr. Cohn, in which he testified as to declarations of the testator that he destroyed his will, were not admissible. We do not understand that the appellee has assigned error in this case, but if he had it would be without profit to consider this legal question as the jury decided the issue in his favor, notwithstanding the testimony of Mr. Cohn.

2. Upon the cross-examination of Jennie L. Steiner, while proponent's counsel was trying to show a series of her matrimonial ventures, he inquired of her on what ground her former husband, Edward Sutter, of Chicago, was divorced from her. She replied "desertion." Counsel then offered the files or certified

copies of the divorce case from the Chicago court containing the summons, the return of service, the bill of complaint and decree, which showed that the decree was granted on the ground of adultery of Jennie L. Steiner.    This was objected to as incompetent because the only purpose for which the testimony could be used was for the purpose of affecting her credibility.    And later, counsel for contestant requested the court to charge the jury that the testimony could be used only for the purpose of affecting her credibility. The trial court refused to so charge and also permitted the files of the Chicago case to be admitted.    This is complained of as serious error.    When proponent's counsel was asked the purpose of introducing the files of that case he replied that one purpose was of showing that the divorce was granted upon the ground of adultery and not desertion, and the other was, "that it bears upon the making of the will by her father."    If the inquiry was being made of the witness on a collateral matter for the purpose of affecting her credibility, counsel would be bound by her answer. It appears, however, that the object of the testimony was for another reason.    It was for the purpose of showing the jury why her father thought she was so erratic that she could not be trusted with the title and management of the property.    The introduction of the files was followed by proof that Mr. Bradley went over to Chicago at the time this divorce was granted and talked with his son-in-law, Sutter, and his lawyer, and knew about the divorce, and afterwards brought Mrs. Steiner home to Muskegon with him.

In the case of *White* v. *Bailey*, 10 Mich. 155, which involved a will wherein the testator had disinherited his children, this court took occasion to say:

"The relevancy of evidence depends upon the issue to be tried.    Some cases admit of a much wider range

than others.    Where the motive of a person for doing an act out of the ordinary course of events is a legitimate subject of inquiry, under the issue, all the surrounding circumstances and influences that might have contributed to or caused such motive may be inquired into."

In the present case Jennie L. Steiner was the only living issue of Mr. Bradley.    It would have been natural for the father to have given her the title to the property, and it was the theory of proponent that the reason he did not do so was her reckless and erratic course in indulging in so many matrimonial ventures that she could not be trusted to conserve and manage the property and, therefore, he felt the only way to provide for her future was to trustee it and have the income paid to her.    For the purpose of showing this motive upon the part of Mr. Bradley it was competent to show these and other divorce proceedings, and that he was aware of them.

3. Contestant offered the following request and assigns error because the trial court refused it:

"There has been introduced in evidence, the testimony of one Martha Riggle, by the proponent in rebuttal.    You are instructed that this testimony was introduced and admitted for the sole and only purpose of impeaching the witness, John M. Steiner, and is to be considered by you for that purpose and no other."

The trial court was right in refusing the request because the testimony of Martha Riggle bore directly upon the main issue in the case.    It contradicted the testimony of Jennie L. Steiner, of her husband and the witness Cohn.    But counsel argues that it should have been introduced by proponent while making his case in chief except for the purpose of impeaching Mr. Steiner.    We are unable to agree with counsel in this contention.    Martha Riggle's testimony was

not very important until Jennie L. Steiner took the stand and testified that her father had destroyed the will in her presence in May, 1919. Proponent might have made it a part of his case in chief, but we think it was timely offered after contestant was sworn. If there were any question about the practice the order of proof is, within reasonable limits, a matter of discretion with the trial court (*Gilchrist* v. *Mystic Workers*, 196 Mich. 247), and we see no abuse of discretion in admitting the proof on rebuttal.

4. Further complaint is made because the trial court refused the following request:

"There has been certain evidence introduced in this cause by the proponent relating to the various marriages of the contestant, Jennie L. Steiner. You are instructed that such testimony is to be considered solely as impeaching testimony, and as bearing on the credibility of the said contestant, Jennie L. Steiner, and for no other purpose, irregardless of whether the said testimony was introduced at the previous trial or not."

The trial court was without error in refusing to give this request, for the very good reason that it was competent for the proponent to show the jury why Mr. Bradley thought his daughter was erratic and not capable of handling the estate. Her reckless conduct in marrying five different men within a short period of time brought much sorrow to Mr. and Mrs. Bradley, and a jury might well conclude that for this reason he was unwilling to trust her with the title to his estate. In writing to his brother in Connecticut in 1917 he advised him he had forwarded to him a copy of his will. He then added:

"We are getting old and do not know what may happen, and wish to know that Jennie will be looked after by those who will be interested in her welfare. We know how erratic she is and how easily influenced

she is, and have, so far as possible, secured to her all we can, the benefits of what we may leave to her."

By showing to the jury her several marriages and her reckless conduct it gave the jury the reasons for Mr. Bradley's feeling that he could not trust her with the title to his estate. Notwithstanding her conduct there was much parental feeling left and he was desirous of having her cared for, and he felt the only way to secure this was to trustee the estate and give her the income thereof.

5. Error is assigned because the trial court refused to grant a new trial. One of the reasons assigned is that the verdict was against the weight of the evidence. It will suffice for us to say we are not in accord with that claim. Certain other reasons are assigned, which are supported by the affidavits of jurymen who sat in the case. We cannot consider these under the rule laid down in *Merriman's Appeal,* 108 Mich. 454.

We have examined and considered the other reasons assigned for a new trial, as well as the other assignments of error, but it will be unnecessary to discuss them, as we are of the opinion that they are without merit. The trial court denied the motion for a new trial, filing his reasons therefor, and we are in accord with them.

The judgment of the trial court is affirmed, with costs to the proponent.

WIEST, C. J., and FELLOWS, SHARPE, MOORE, and STEERE, JJ., concurred.

MCDONALD and CLARK, JJ., concurred in the result.